**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | | |
|---|---|---|
| Mohammad Hussain Ahmadi, | ) | |
| | ) | **ORDER GRANTING PETITION FOR** |
| Petitioner, | ) | **WRIT OF HABEAS CORPUS** |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:26-cv-74 |
| Markwayne Mullin, et al., | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Mohammad Hussain Ahmadi petitions for a writ of habeas corpus. Docs. 1; 8. Respondents oppose the Petition. Docs. 5; 9. For the reasons below, the Court grants the Petition and orders Respondents to grant Petitioner a bond hearing.

I.    <u>BACKGROUND</u>

Petitioner is a citizen of Afghanistan and resident of West Fargo, North Dakota. Doc. 1 at 5-7. In early 2024, he presented himself at the border and was paroled into the United States after using the CBP-One application. <u>Id.</u> His parole was granted pursuant to 8 U.S.C. § 1182(d)(5) and was "valid for one year" beginning on May 17, 2024, and would "automatically terminate . . . at the end of the one-year period." Doc. 5 at 2; Doc. 1 at 6. He was placed in removal proceedings and charged under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act as an applicant for admission without valid entry documents. <u>Id.</u>

After being paroled into the United States, Petitioner filed a timely application for asylum. <u>Id.</u> at 7. His asylum application remains pending. <u>Id.</u> at 8. On March 2, 2026, U.S. Immigration and Customs Enforcement ("ICE") agents arrested Petitioner in connection with a scheduled appearance at the Fourt Snelling Immigration Court in Fort Snelling, Minnesota. <u>Id.</u> Petitioner was

transferred to the Grand Forks County Correctional Center in Grand Forks, North Dakota, where he remains in custody. Id.

Petitioner filed this Petition on March 18, 2026. Doc. 1. He asserts his detention under 8 U.S.C. § 1225(b)(2) is unlawful because it violates the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act. Id. at 9. He requests immediate release from detention or a bond hearing. Id. at 14-15. Respondents oppose the Petition. Docs. 5; 9.

## II. DISCUSSION

A district court may provide habeas relief to a person who is being detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). That authority includes jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001). The burden is on the petitioner to prove illegal detention. 28 U.S.C. § 2241(c)(3); Walker v. Johnston, 312 U.S. 275, 286 (1941). Petitioner's arguments raise two questions: whether he is entitled to a bond hearing on either statutory or constitutional grounds.

Regarding the statutory argument, Petitioner argues he is being improperly held under 8 U.S.C. § 1225(b)(2)(A) instead of 8 U.S.C. § 1226(a). Doc. 1 at 12-14. But the Eighth Circuit's decision in Avila v. Bondi forecloses this argument. 170 F.4th 1128 (8th Cir. 2026). Avila concerned the "Government's power to detain aliens under 8 U.S.C. § 1225." Id. at 1132. Section 1225(a)(1) indicates the statute applies to an alien who is an "applicant for admission." Id. at 1133 (quoting 8 U.S.C. § 1225(a)(1)). An applicant for admission is "[a]n alien present in the United States who has not been admitted or who arrives in the United States." Id. (quoting 8 U.S.C. § 1225(a)(1)). "Being 'admitted' does not merely mean being present in the United States; under immigration law, it signifies having made a lawful entry into the country." Id. Section 1225(b)(2)(A) states that "in the case of an alien who is an applicant for admission, if the

2

examining immigration officer determines that an alien <u>seeking admission</u> is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings.]" <u>Id.</u> (quoting 8 U.S.C. § 1225(b)(2)(A)). The question in <u>Avila</u> was "whether an alien who is an 'applicant for admission' is also 'seeking admission' under § 1225(b)(2)(A)." <u>Id.</u> If the answer is yes, "then, generally, any 'alien present in the United States who has not been admitted' 'shall be detained.'" <u>Id.</u>

The Eighth Circuit held the terms are equivalent.[1] <u>Id.</u> at 1138. While a noncitizen remains an "applicant for admission" so long as they are "present in the United States" and have "not been admitted," they are also "presently seeking admission," regardless of whether they take "any further affirmative steps to gain admittance." <u>Id.</u> <u>Avila</u> dictates that § 1225 applies to Petitioner. He is an "applicant for admission" as the term is defined by the statue: "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Petitioner has been "physically present and continuously residing in the United States" for over two years. Doc. 1 at 13. He "has not been admitted" because, although he was paroled into the country under 8 U.S.C. § 1182(d)(5)(A), the statute dictates that "parole . . . shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A).

Petitioner argues that his parole weighs in his favor because "[p]arole expiration does not reset a person's status to that of someone newly presenting at the border." Doc. 1 at 13. But as indicated above, parole—or the expiration of parole—does not change Petitioner's status as an "applicant for admission." 8 U.S.C. § 1182(d)(5)(A). And under <u>Avila</u>, someone who is an

---

[1] The Eighth Circuit's holding aligns with the Fifth Circuit's decision in <u>Buenrostro-Mendez v. Bondi</u>, 166 F.4th 494, 502 (5th Cir. 2026).

3

"applicant for admission" is also "seeking admission." Avila, 170 F.4th at 1138. Thus, Petitioner's statutory argument fails.

But Avila does not foreclose Petitioner's procedural due process claim. The Eighth Circuit's decision was based on its construction of § 1225(b)(2), not the Fifth Amendment. Id. at 1140-41. (Erickson, J., dissenting). The Due Process clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

To determine whether a civil detention violates a detainee's due process rights, courts apply the test in Mathews v. Eldrige, 424 U.S. 319, 335 (1976). Courts consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

At the outset, Respondents argue a Mathews analysis is not necessary because precedent dictates that Petitioner's detention does not violate his due process rights. Demore v. Kim, 538 U.S. 510, 523 (2003) (analyzing the detention of an alien under 8 U.S.C. § 1226(c) with a criminal record involving theft and first-degree burglary); Baynee v. Garland, 115 F.4th 928, 930 (8th Cir. 2024) (analyzing the detention of an alien under 8 U.S.C. § 1226(c) who was convicted of "theft, lying to the police . . . possessing marijuana and drug paraphernalia . . . [and] robbery with a dangerous weapon"). The Court finds these cases are easily distinguishable. Besides the detention being based on a different statutory section, the respondents in those cases demonstrated the petitioners were a danger or flight risk based on their criminal convictions. As the following Mathews analysis will reveal, that is not the case here.

The first <u>Mathews</u> factor requires consideration of the private interest affected by the official action. <u>Mathews</u>, 424 U.S. at 335. "Freedom of imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty clause that [the Due Process] Clause protects." <u>Zadvydas</u>, 533 U.S. at 690; <u>see also</u> <u>Foucha v. Louisiana</u>, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."). During the more than two years in which Petitioner has resided in the United States, he has built a life here. He has appeared for all scheduled immigration hearings and complied with the law. Doc. 1 at 7. The Court finds that Petitioner has a strong liberty interest in his freedom from detention. <u>See</u> <u>Lopez Miranda v. Flores</u>, No. 25-cv-584, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) ("[N]oncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status."). Petitioner's liberty interest is further strengthened by the fact that Respondents paroled him from civil immigration custody in 2024. Doc. 1 at 2. Numerous courts have found that individuals paroled from civil immigration custody have a protectable liberty interest in remaining so. <u>See</u> <u>e.g.</u>, <u>Zapata v. Kaiser</u>, No. 25-cv-7492, 2025 WL 2578207, at *3 (N.D. Cal. Sept. 5, 2025) (collecting cases). The first <u>Mathews</u> factor weighs in Petitioner's favor.

The second <u>Mathews</u> factor asks whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks. <u>Mathews</u>, 424 U.S. at 335. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. <u>Zadvydas</u>, 533 U.S. at 690. Respondents previously determined that Petitioner did not pose a threat, paroling him into the United States

under 8 U.S.C. § 1182(d)(5)(A), which allows the Department of Homeland Security to parole noncitizens "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5). Because Respondents "[have] 'communicated no basis under those statutory purposes' for re-detaining him now, there is a high risk that [Petitioner] has been and will continue to be erroneously deprived of his liberty." Ramirez-Mendez v. Olson, No. 26-17, 2026 WL 907576, at *4 (E.D. Ky. April 2, 2026) (holding the second Mathews factor weighed in petitioner's favor where he was paroled under 8 U.S.C. § 1182(d)(5)(A) and respondents alleged no basis for re-detaining under the statutory purposes of preventing flight and danger to the community).

Petitioner has not been afforded a custody redetermination hearing. To counter the risk of erroneous deprivation, such hearing is appropriate. See e.g., Azalyar v. Raycraft, 814 F. Supp. 3d 926, 934 (S.D. Ohio 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [petitioner's] continued detention[.]"); Ramirez-Mendez, 2026 WL 907576, at *4 (holding that a custody redetermination hearing countered the risk of erroneous deprivation of petitioner's rights); Alvarez-Rico v. Noem, No. 4:26-cv-729, 2026 WL 522322, at *6 (S.D. Tex. Feb. 25, 2026) ("Absent some sort of pre-detention hearing to determine whether his circumstances have changed such that he now presents a danger or a flight risk when the government previously determined that he presented neither, the risk of erroneous deprivation of [the petitioner's] liberty interest is obvious.").

Third, the Court recognizes that Respondents have a legitimate interest in ensuring that noncitizens appear for removal hearings and do not pose a danger to the community. But here, Respondents' interest in detaining Petitioner is low because they have not established that he is unlikely to appear or that he is a threat to the community. See Maldonado v. Olson, 795 F. Supp.

3d 1134, 1153-54 (D. Minn. 2025) (granting habeas petition in part because there was no showing that public safety or attendance concerns required detention). Respondents previously determined Petitioner was not a danger when they granted him parole. They fail to allege that this is no longer the case. Further, because a bond hearing allows Respondents to plead their case, there is no risk that requiring one will impede their interests. Azalyar, 814 F. Supp. at 935 (holding that a bond hearing does not impede respondents' interests). Nor is there a risk that requiring a bond hearing will impose more than a minimal cost. Id. (citing Singh v. Andrews, No. 25-cv-801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025)). The Court concludes that Respondents' interest in protecting the public or avoiding additional administrative burdens do not outweigh Petitioner's liberty interest, especially when a mechanism exists to safeguard due process.

## III.    CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant case law. Petitioner's petition for writ of habeas corpus (Docs. 1; 8) is **GRANTED**. Respondents are **ENJOINED** from detaining Petitioner unless he is provided with a bond hearing within seven calendar days of the filing date of this Order.

**IT IS SO ORDERED**.

Dated this 3rd day of June, 2026.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court

7